UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

| | | |
|---|---|---|
| GLADSTONE GORDON, | : | Index No: 19-CV-8107 |
| | : | (JGK) |
| Plaintiff, | : | |
| | : | |
| -against- | : | |
| | : | |
| GENERAL PROPERTY MANAGEMENT | : | |
| ASSOCIATES, INC., and 124 WEST 24TH STREET | : | |
| CONDOMINIUM, | : | |
| | : | |
| Defendants. | : | |

-------------------------------------------------------------------------X

### MEMORANDUM OF LAW OF DEFENDANTS IN
### SUPPORT OF THEIR MOTION FOR SUMMARY JUDGEMENT

**BOYD RICHARDS PARKER & COLONNELLI, P.L.**
*Attorneys for Defendants*
1500 Broadway, Suite 505
New York, New York 10036
(212) 400-0626

## TABLE OF CONTENTS

PRELIMINARY STATEMENT………………………………………………1

STATEMENT OF RELEVANT FACTS…………………………………...3

ARGUMENT                                                                                                5

POINT I………………………………………………………………………5

THIS COURT LACKS JURDISCTION TO HEAR GORDAN'S FLSA CLAIM AS
THERE IS NEITHER ENTERPRISE NOR INDIVIDUAL COVERAGE

POINT II……………………………………………………………………....9

GORDAN IS A JANITOR UNDER NEW YORK LAW AND IS THEREFORE
NOT ENTITLED TO OVERTIME

POINT III …………………………………………………………………12

GENERAL PROPERTY WAS NOT GORDON'S EMPLOYER

CONCLUSION…………………………………………………………....16

# TABLE OF AUTHORITIES

## <u>Case Law</u>

*Almanzar v .Townhouse Mgt. Co., Inc.*,

    2015 N.Y.Misc.LEXIS 4625 (Sup. Ct., Bronx Cty. 2015)…………………………9, 12


*Chen v. Oceanica Chinese Rest., Inc.*,

    2016 U.S.Dist.LEXIS 46133 (E.D.N.Y. 2016)…………………………………......7-9


*Contrera v. Langer*,

    290 F.Supp.3d 269 (S.D.N.Y. 2018)………………………………………......10, 12


*D'Arpa v. Runway Towing Corp.*,

    2013 U.S.Dist.LEXIS 85697 (E.D.N.Y. 2013)……………………………………14


*Day An Zhang v. L.G. Apparel, Inc.*,

    2011 U.S.Dist. LEXIS 26816 (E.D.N.Y. 2011)……………………………………7


*Draskovic v. Oneota Assocs.,LLC*,

    2019 U.S. Dist.LEXIS 28017 (E.D.N.Y. 2019)……………………………......9


*Fortis, Inc. v. United States*,

    420 F.Supp.2d 166 (S.D.N.Y. 2004)…………………………………………..11


*Greenery Rehabilitation Group, Inc. v. Hammon*,

    150 F.3d 226 (2d Cir. 1998)……………………………………………………11


*Hart v. Rick's Cabaret Int'l., Inc.*,

    967 F. Supp. 2d 901 (S.D.N.Y. 2013)……………………………………………14


*Holzapfel v. Town of Newburgh*,

    145 F.3d 516 (2d Cir. 1998)…………………………………………………..13, 15

*Huerta v. Bakery*,

    2012 U.S. Dist. LEXIS 46407 (E.D.N.Y. 2012)…………………………………....6, 7

*Ibarra v. W&L Grp. Constr., Inc.*,

    2019 U.S.Dist.LEXIS 195175 (E.D.N.Y. 2019)…………………………………....13

*Koljenovic v. Marx*,

    999 F.Supp.2d 396 (E.D.N.Y. 2014)…………………………………………………10, 12

*Lee v. Kim*,

    2013 U.S.Dist.LEXIS 121952 (E.D.N.Y. 2013)……………………………………6 - 7

*Leich v. Borchard Affiliations*,

    256 A.D. 1019 (3d Dep't 1939)……………………………………………………12

*Moses v. Griffin Indus., LLC*,

    2019 U.S.Dist.LEXIS 74186 (S.D.N.Y. 2019)……………………………………..13

*Ni Ping v. No. 1 Great Wall of Fulton 168*,

    2017 U.S.Dist.LEXIS 60506 (E.D.N.Y. 2017)……………………………………5-6, 9

*Schmidt v. Emigrant Indus. Sav. Bank*,

    148 F.2d 294 (2d Cir.1945)…………………………………………………………12

*Shi Ming Chen v. Hunan Manor Enter.*,

    2018 U.S.Dist.LEXIS 29599 (S.D.N.Y. 2018)……………………………………..15

*Tracy v. NVR, Inc.*,

    667 F.Supp.2d 244 (W.D.N.Y. 2009)………………………………………………15

*United States v. Gayle*,

    342 F.3d 89 (2d Cir. 2003)…………………………………………………………..11

*Xelo v. Mavros*,

    2005 U.S.Dist.LEXIS 21588 (E.D.N.Y. 2005)…………………………………….7

*Zheng v. Liberty Apparel Co. Inc.*,

    355 F.3d 61 (2d Cir. 2003)……………………………………………………..13

### <u>Statutes</u>

29 U.S.C. § 203(s)(1)(A)……………………………………………………………5 - 6

12 N.Y.C.R.R. Sec. 141-1.4 – 3.4……………………………………………..9

## PRELIMINARY STATEMENT

Defendants General Property Management Associates ("General Property") and 124 West 24th Street Condominium (the "Condo") submit this memorandum of law, pursuant to FRCP R. 56, in support of their motion for summary judgment, seeking dismissal of the Complaint in its entirety.

This is a straightforward overtime dispute brought by a superintendent against his employer, a small residential condominium, and its former property management company (which is not and never was his employer). Gordon claims that he worked in excess of 40 hours each week and is owed overtime under the Fair Labor Standards Act (the "FLSA") and the New York Labor Law (the "NYLL"). The Complaint must be dismissed though as no jurisdiction exists under the FLSA and Gordon is exempt from overtime under the NYLL.

With respect to the FLSA claim, to demonstrate that jurisdiction exists under "enterprise coverage", Gordon has the burden of proof and must demonstrate that the Condo's annual revenue exceeded $500,000 during the relevant time period, and that its employees were engaged in interstate commerce. This burden cannot be met. The Condo's financial statements demonstrate that its revenue never exceeded (or even approached) this threshold amount and, for this reason alone, is not a covered entity subject to the FLSA's provisions. Moreover, even if the Condo's annual revenue exceeded $500,000, the Condo must also have had more than one employee during the relevant time period to meet the statutory definition of a covered entity and thus subject to the FLSA. However, the Condo only employed one person: Gordon. This fact standing alone is determiniative and shows that Gordon cannot establish jurisdiction under the FLSA, and for this additional reason the FLSA claim must be dismissed.

As for the NYLL claim, Gordon was an exempt janitor, regardless of whether he was a

live-in janitor or not. More specifically, while Gordon alleges that based on his status as a non-live in janitor, he is not exempt from receiving overtime, this is not an accurate reading of the law. Rather, when there is only <u>one</u> employee performing janitorial services in a residential building - - as is the case here, and Gordon concedes he performed janitorial services - - that employee is considered the exempt janitor under Section 141-3.4 of the NYLL. This is regardless of whether the Condo designated Gordon as its exempt janitor or whether he lived in the building.

Finally, to the extent Gordon also seeks to hold General Property liable for his overtime claims, there can be no credible dispute that General Property was not his employer. There are a number of factors to be considered when determining whether an entity is one's employer for purposes of an overtime claim, none of which have been met here. Among other things, the courts must consider whether: the employee was paid by the purported employer; it had control to hire or fire the employee; the employee used the purported employer's premises and equipment in performing his work; the employee performed a job that was integral to the purported employer's operations; and the employee worked exclusively or predominantly for the purported employer. Here, each and every inquiry must be answered in the negative.

With respect to General Property, Gordon alleges <u>only</u> that: (a) General Property paid him; and (b) it supervised his work. The record unequivocally demonstrates that General Property only was involved for a partial time period. Gordon's salary was solely the Condo's financial responsibility, and General Property was responsible for the ministerial task of providing him with his paychecks. Other than this, General Property's only other dealings with Gordon was to generally oversee his work. It had no independent authority to discipline or terminate him, or to change his pay, without relying on the Board's previously implemented policies. General

Property's minimal involvement with Gordon's employment - - which was solely for the benefit of the Condo's operations, and not General Property - - is insufficient to hold it liable as his employer and they must be dismissed from the Complaint.

For the foregoing reasons, as more thoroughly set forth below, the Complaint must be dismissed in its entirety.

## STATEMENT OF RELEVANT FACTS

The Condo, a small residential apartment building (with twenty residential units and one commercial unit) is located at 124 West 24th Street in Manhattan. [Rule 56.1, ¶¶ 1-2]. Its annual revenue for each of the relevant years was under $500,000. [Rule 56.1 ¶ 24].

The Condo hired Gordon as its janitor/superintendent in June 2007, and Gordon held the same position until late-2018 when he took disability leave (and has not returned since). [Rule 56.1, ¶¶ 3, 5, 8]. Throughout Gordon's entire tenure, he was the Condo's sole employee. [Rule 56.1, ¶ 9].When Gordon was hired, the Condo employed a different professional manging agent - - not General Property. [Rule 56.1, ¶ 4].Therefore, General Property had no role whatsoever in hiring him. The Condo replaced its former managing agent with General Property in January 2012. [Rule 56.1, ¶ 13]. General Property is a professional property management service which is located at 250 West 57th Street in Manhattan. [Rule 56.1, ¶ 12]. The Condo later terminated its relationship with General Property. [Rule 56.1, ¶ 17].

Gordon worked at all times at the Condo's premises and never worked at General Property's office. [Rule 56.1, ¶¶ 6-7]. Moreover, all of his work solely benefited the Condo, not General Property, and he alleges in his Complaint that his job duties were janitorial in nature, and that he was responsible for: inspecting and cleaning the elevators, motors, pumps and the Condo's

other mechanical equipment; maintaining its walkways, including sweeping, washing and shoveling; cleaning the lobby, the hallway and common area walls; trash and recyclable removal; mopping, sweeping and vacuuming all of the Condo's floors; inspecting light fixtures; occasionaly accepting residents' packages; and inspecting the roof', drains and gutters on a weekly basis. [Rule 56.1, ¶¶ 6, 22].

Gordon claims that he worked over 40 hours and was entitled to overtime, but was not paid the overtime he worked and instead claims that he was paid a flat weekly rate regardless of the number of hours. [Rule 56.1, ¶¶ 10-11]. According to Gordon, General Property generally supervised his work and paid him (jointly with the Condo), but that the Condo's board of managers (the "Board") was responsible for creating his job duties and responsibilities. [Exhibit A, ¶¶ 11, 13].

Gordon though was employed and paid exclusively by the Condo, which paid Gordon's salary, benefits, taxes and insurance from its own funds. [Rule 56.1, ¶¶ 18-21]. The Condo's financial statements reflect that the total wages paid to its only employee directly correlates with Gordon's total income reflected on the Employee Earnings Cards. [Rule 56.1, ¶ 23].

As an agent for a disclosed principal, General Property's only role in connection with paying Gordon was ministerial, *i.e.*, to process his payroll checks from the Condo's bank account, as it did for the Condo's other accounts due and owing. General Property had no independent authority to make decisions about Gordon's payroll, job responsibilities or continued employment. [Rule 56.1, ¶¶ 14 - 16, 25 - 30].

**ARGUMENT**

**POINT I**

**THIS COURT LACKS JURISDICTION TO HEAR GORDON'S FLSA CLAIM AS THERE IS NEITHER ENTERPRISE NOR INDIVIDUAL COVERAGE**

A plaintiff alleging entitlement to unpaid overtime and minimum wage payments under the FLSA must first demonstrate the threshold issue that jurisdiction pursuant to the FLSA exists. A plaintiff can demonstrate jurisdiction by showing either: (a) that the employer is subject to the FLSA's minimum wage and overtime provisions ("enterprise coverage"); or (b) that the FLSA's provisions cover the particular employee asserting a claim ("individual coverage"). Absent the plaintiff satisfying this jurisdictional hurdle, the Court cannot hear the case and the complaint must be dismissed.

*FLSA's Enterprise Coverage*

To demonstrate "enterprise coverage", a two part test must be satisfied. The plaintiff must show that his employer's annual gross revenue was at least $500,000, and that the employer either: (a) had <u>employees</u> engaged in commerce; or (b) is an "enterprise engaged in commerce". <u>Ni Ping v. No. 1 Great Wall of Fulton 168</u>, 2017 U.S.Dist.LEXIS 60506 (E.D.N.Y. 2017) *citing* 29 U.S.C. § 203(s)(1)(A).

If the minimum $500,000 annual revenue threshold is not met, the employer does not fall within the FLSA's perview (regardless of whether the enterprise or its employees were engaged in interstate commerce) and an FLSA claim cannot proceed. <u>Id</u>.

Here, the Condo - - which is a small residential apartment building that does not conduct any business - - did not have have annual gross revenue exceeding $500,000 during the relevant time period. [Exhibit D]. In fact, during most years, the Condo collected common charges that

5

totaled well under $300,000. [Exhibit D]. As a result, there is no enterprise coverage jurisdiction under the FLSA. See 29 U.S.C. § 203(s)(1)(A); Ni Ping, supra, 2017 U.S.Dist.LEXIS 60506.

Furthermore, assuming *arguendo*, that the Condo did collect $500,000 in gross revenue (and it never came close), in order to demonstrate "enterprise coverage", the employee is next required to demonstrate that either the employer: (a) had employees engaged in commerce; or (b) is an "enterprise engaged in commerce". Lee v. Kim, 2013 U.S.Dist.LEXIS 121952 (E.D.N.Y. 2013) (*emphasis supplied*).

To satisfy either of the two prongs above, the employer must have employed more than one employee, each of whom were engaged in interstate commerce. Lee, supra, 2013 U.S.Dist.LEXIS 121952 citing Huerta v. Bakery, 2012 U.S. Dist. LEXIS 46407 (E.D.N.Y. 2012). Employers with only a single employee cannot demonstrate either prong of this test thus cannot establish enterprise coverage. Id.; Huerta, supra, 2012 U.S. Dist. LEXIS 46407.

At bar, it cannot be disputed that Gordon was the Condo's only employee during the relevant time period. Indeed, the Condo's Employee Earnings Cards for 2013 through 2018 identify Gordon as the only employee. [Exhibit C]. Furthermore, the Condo's audited financial statements reflect that the total wages paid to its employee directly match that paid to Gordon (as reflected in the Earnings Cards). [Exhibits C - D].  For example, as per the 2014 Earnings Card, Gordon's total gross income was $54,260. [Exhibit C]. The  2014 audited financial statements reflect the total amount paid in wages was $54,260. [Exhibit D].

In light of the fact that the Condo's common charge revenue fell short of $500,000 and that Gordon was the Condo's only employee, the Condo is not a covered enterprise under the FLSA

and thus there can be no jurisdiction on this basis. <u>Lee</u>, <u>supra</u>, 2013 U.S.Dist.LEXIS 121952; <u>Huerta</u>, <u>supra</u>, 2012 U.S. Dist. LEXIS 46407.

***FLSA's Individual Coverage***

Given that enterprise coverage does not apply, in order to survive the instant motion, Gordon must demonstrate that he, as an employee, is covered under the FLSA pursuant to individual coverage. The dispositive test is whether "a plaintiff was an employee in the channels of interstate commerce, **as distinguished from one who merely affected that commerce**". <u>Chen v. Oceanica Chinese Rest., Inc.</u>, 2016 U.S.Dist.LEXIS 46133 (E.D.N.Y. 2016) *citing* <u>Xelo v. Mavros</u>, 20015 U.S.Dist.LEXIS 21588 (E.D.N.Y. 2005) (*emphasis supplied*).

For purposes of individual coverage, individual employees are engaged in commerce only "when they are performing work involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) **between states**". <u>Chen</u>, <u>supra</u>, 2016 U.S.Dist.LEXIS 46133. (*emphasis supplied*).  For example, an employee who works for a manufacturing, processing or distributing company that produce goods for interstate or foreign commerce would satisfy this test. <u>Day An Zhang v. L.G. Apparel, Inc.</u>, 2011 U.S.Dist. LEXIS 26816, *9 (E.D.N.Y. 2011).

Significantly, "interstate commerce" for purposes of individual coverage is defined differently and is harder to establish than that  for purposes of enterprise coverage. Pursuant to the enterprise coverage test, a qualifying employer (with two or more employees) must have its employees "engage[d] in interstate commerce", but this test is met even if the employees only tangentially engage in interstate commerce.  Examples of that are where employees wear uniforms made out of state or use products that have moved between the states. <u>Chen</u>, <u>supra</u>, 2016

7

U.S.Dist.LEXIS 46133.

By stark contrast, to demonstrate individual coverage, the burden of proof is much higher. A plaintiff must demonstrate that he, himself, was engaged in interstate commerce, such as a factory worker who aids in the manufacturing of goods to be sold across state lines. Under an individual coverage analysis, employees who merely handle goods imported from out of state after acquisition, for general local disposition, are not considered to be engaging in interstate commerce". Chen, supra, 2016 U.S.Dist.LEXIS 46133. (holding that a chef who prepared food that was shipped from out of state, and then served to out-of-state customers, merely effected commerce and was not substantially involved in interstate commerce for purposes of demonstrating "individual coverage").

Here, there can be no dispute that, as a janitor, Gordon's duties did not include the movement of goods or persons through interstate channels. Indeed, he acknowledges that his job duties were limited to one location where he: inspected and cleaned the elevators, motors, pumps and other mechanical equipment; swept, washed and shoveled the walkways; cleaned the lobby, hallway and common area walls and floors; removed trash and recyclables; inspected light fixtures; accepted residents' packages; and inspected the Condo's roof, drains and gutters.  [Exhibit A, ¶ 14].

In light of the above, there can be no credible argument that Gordon actively engaged in interstate commerce, and thus a "covered individual" under the FLSA for purposes of establishing jurisdiction. Chen, supra, 2016 U.S.Dist.LEXIS 46133.

Where neither the Condo nor Gordon are covered under the FLSA, no jurisdiction exists for Gordon's FLSA claims and they must accordingly be dismissed. See <u>Ni Ping</u>, <u>supra</u>, 2017 U.S.Dist.LEXIS 60506; <u>Chen</u>, <u>supra</u>, 2016 U.S.Dist.LEXIS 46133.

**POINT II**

**GORDON IS A JANITOR UNDER NEW YORK LAW
AND IS THEREFORE NOT ENTITLED TO OVERTIME**

The NYLL generally provides that employees must be paid overtime for all hours worked over forty hours per week. However, certain exemptions exist to this obligation, including that which is applicable here, the janitorial exemption. See 12 N.Y.C.R.R. Sec. 141-1.4 – 3.4. The relevant provision of the NYLL provides that:

> An employer shall pay an employee, *except a janitor in a residential building*, for overtime at a wage rate of 1 1/2 times the employee's regular rate for hours worked in excess of 40 hours in a workweek.
>
> A janitor is a person employed to render any physical service in connection with the maintenance, care or operation of a residential building. *Where there is only one employee, such employee shall be deemed the janitor*. Where there is more than one employee in the building, the employer shall designate an employee who lives in the building as the janitor. No building may have more than one janitor.

12 N.Y.C.R.R. Sec. 141-1.4 – 3.4. (*emphasis supplied*).

"Janitors" are <u>exempt</u> from collecting hourly wages and overtime compensation under the statute and, instead, are to be paid a minimum salary calculated on a per unit basis, *i.e.* based on the number of apartments within a building. <u>Id</u>. <u>See</u> <u>also</u>, <u>Draskovic v. Oneota Assocs., LLC</u>, 2019 U.S.Dist.LEXIS 28017 (E.D.N.Y. 2019) ("*Instead of requiring an hourly minimum wage and overtime premium*, New York requires employers in the building service industry to pay janitors in residential buildings a weekly minimum based on the number of units in the building, subject to a cap."); <u>Almanzar v .Townhouse Mgt. Co., Inc.</u>, 2015 N.Y.Misc.LEXIS 4625 (Sup. Ct., Bronx

Cty. 2015) ("[J]anitors are paid weekly based on the total numberof building units subject to a cap…*They are excluded from collecting hourly wages and overtime*.").

For small employers, such as the Condo, who employ ten or fewer people, "resident or *non-resident janitors*" are required to be paid the following minimum weekly rates based on a calculation per apartment unit located within the building: (a) $4.85 in 2012-2013; (b) $5.35 in 2014; (c) $5.85 in 2015; (d) $6.00 in 2016; (e) $7.00 in 2017; (f) $8.00 in 2018; and (g) $9.00 in 2019. See 12 NYCRR § 141-1.2.

Therefore, based on these rates, over the relevant time period, the statutory minimum he was entitled to was - - at the highest rate - - $9,360 per year, based on the fact that the building has 20 residential units. Gordon though was paid much more with an annual salary of more than $50,000.

In order for the exemption to apply, buildings with  more than one employee, must designate which of those employees it  deems the "janitor" for purposes of the exemption. The designation is necessary "to mitigate the risk of the employer compensating several employees at the reduced janitor rate and then using after-the-fact designations to ward off subsequent wage and overtime claims." Contrera v. Langer, 290 F.Supp.3d 269 (S.D.N.Y. 2018) citing Koljenovic v. Marx, 999 F.Supp.2d 396 (E.D.N.Y. 2014).

However, "when only one employee is capable of being designated the janitor — *either because he or she is the only employee performing janitorial services in the building*, or the only such employee living in the building — then *the employee is considered the exempt janitor* under section 141-3.4 regardless of whether the employee was designated as such." Contrera v. Langer, 290 F.Supp.3d 269 (S.D.N.Y. 2018). In other words, if a building has only one employee, just as

here, that employee is not required to live in the building to be deemed the janitor, so long as he is the only employee performing its janitorial services. Id.

That the "live-in" requirement is only applicable to buildings with <u>more than one employee</u> is reflected in the statute's specific language which references "non-resident janitors" with respect to calculating the unit-based weekly wages set forth within 12 NYCRR § 141 – 1.2.  See <u>Fortis, Inc. v. United States</u>, 420 F.Supp.2d 166 (S.D.N.Y. 2004) *citing*  See <u>United States v. Gayle</u>, 342 F.3d 89, 92 (2d Cir. 2003); <u>Greenery Rehabilitation Group, Inc. v. Hammon</u>, 150 F.3d 226, 231 (2d Cir. 1998) ("Interpretation of a statute must begin with the statute's language. To ascertain the plain meaning of a provision, the court should look to the language of the provision in light of the statutory scheme as a whole. If the statutory terms are unambiguous, the inquiry generally ends there, and the statute is construed according to its plain meaning.").

Here, Gordon's allegations reflect that he was a janitor and he admitted that he was responsible for performing janitorial duties, including that he:

- Maintained the Condo's temperature;

- Inspected and  cleaned the elevators, motors, pumps and the Condo's other mechanical equipment;

- Maintained its walkways, including sweeping, washing and shoveling;

- Cleaned the lobby on a daily basis;

- Removed trash and recylclables;

- Mopped, swept and vacuumed;

- Cleaned the hallway and common area walls;

- Inspected the light fixtures;

- Brought packages to residents' apartments; and

11

- Inspected the roof, drains and gutters on a weekly basis.

[Exhibit A, ¶ 14]. See Schmidt v. Emigrant Indus. Sav. Bank, 148 F.2d 294, 295–96 (2d Cir.1945) (holding that menial tasks such as conducting small repairs, cleaning and inspecting and maintaining building systems are those typical of a janitor's duties); Almanzar, supra, 2015 N.Y.Misc.LEXIS 4625 ("A janitor is a person employed to render any physical service in connection with the maintenance, care or operation of a residential building. *citing* 12 NYCRR § 141-3.4.").

Furthermore, as discussed in Koljenovic, supra, "'building superintendent[],' . . . in the common parlance of New York City refers to a resident janitor." 999 F. Supp. 2d at 400 (*citing* Leich v. Borchard Affiliations, 256 A.D. 1019, 1019 (3d Dep't 1939) ("Claimant was the janitor or building superintendent of two apartment houses."); Schmidt, supra, 148 F.2d 294, 295–96 (affirming district court's conclusion that the "the plaintiff was a working superintendent with the menial tasks generally attributed to a janitor.").

Accordingly, in light of the above and taking the Complaint's allegations and the documentary evidence into consideration, Gordon, as a janitor, is exempt from the NYLL's overtime requirements. The fact that he does not live in the building is of no moment, as he is the Condo's only employee. See e.g. Contrera, supra, 290 F.Supp.3d 269; 12 NYCRR § 141 – 1.2. Gordon's NYLL claims must therefore be dismissed.

## POINT III

## GENERAL PROPERTY WAS NOT GORDON'S EMPLOYER

It has long been settled that courts must utilize the "economic reality" test to determine whether an employment relationship exists for purposes of the FLSA. In so doing, several factors

are considered, including: (a) whether the alleged employer had the power to hire and fire the employees; (b) supervised and controlled employee work schedules or conditions of employment; (c) determined the rate and method of payment; and (d) maintain employment records. Moses v. Griffin Indus., LLC, 2019 U.S.Dist.LEXIS 74186 (S.D.N.Y. 2019); Ibarra v. W&L Grp. Constr., Inc., 2019 U.S.Dist.LEXIS 195175 (E.D.N.Y. 2019).

The Second Circuit also applies a six-part test to determine whether an entity has "functional control" over the employee in the absence of formal control, in determining whether that entity is his employer. Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61 (2d Cir. 2003). The relevant factors include:

> (1) whether the purported joint employer's premises and equipment were used for the plaintiff's work; (2) whether plaintiff worked for an organization that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiff performed a discrete line job that was integral to the purported joint employer's process of production; (4) whether responsibility under the contracts could pass from one purported joint employer to another without material changes; (5) the degree to which the purported joint employer supervised plaintiff's work; and (6) whether plaintiff worked exclusively or predominantly for the purported joint employer.

Id. at *42-43.

More to this point, for an employee to demonstrate that he worked, and is thus entitled to be paid straight or overtime, he must demonstrate that he engaged in "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily **for the benefit of the employer and his business**". Holzapfel v. Town of Newburgh, 145 F.3d 516 (2d Cir. 1998) (*emphasis added*).

A plaintiff's burden in establishing that a defendant is his or her employer for purposes of entitlement to the NYLL's protections, is similar to the definition a plaintiff must satisfy under the

FLSA. As "the New York Labor Law is the state analogue to the federal FLSA", the NYLL's definitions are nearly identical to the FLSA's. D'Arpa v. Runway Towing Corp., 2013 U.S.Dist.LEXIS 85697 (E.D.N.Y. 2013) (*internal citations omitted*). One way in which the NYLL's definitions are "nearly identical" to that of the FLSA, but not identical, is that the test for who constitutes an employer under the NYLL "focuses more on the degree of control exercised by the purported employer, over the purported employee, as opposed to the economic reality of the situation." Hart v. Rick's Cabaret Int'l., Inc., 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013).

At bar, Gordon knows that General Property was not his employer, especially since it only managed the property for a portion of the time he worked and had no role in hiring him. He nonetheless seeks to prove a fictional employment relationship by alleging that General Property: (a) oversaw Gordon's work on a daily basis; and (b) paid Gordon (*i.e.*, physically handed him his check). [Exhibit A, ¶ 11]. In point of fact, Gordon did not perform any work that benefitted General Property, the Condo paid Gordon through its own funds, including payroll taxes and other benefits. General Property's funds were not used, and it was responsible only for the menial task of cutting the check from the Condo's bank account and physically handing it to Gordon. [Exhibit A, ¶ 12 – 14; Exhibit B - D].

Without this, the only basis for Gordon to attempt to hold General Property liable as an employer is the *pro forma,* boilerplate allegation that it "oversaw" Gordon's work. Yet, Gordon acknowledged that General Property was not responsible for creating his job duties and responsibilities, but rather that was done by the Condo's board. [Exhibit A, ¶ 13].

And finally, by Gordon's own admission, his job responsibilities exclusively benefited the Condo, *i.e.* cleaning its building, inspecting and maintaining its systems and removing its trash.

14

Not one task identified by Gordon was done for the benefit of General Property's operations. Holzapfel v. Town of Newburgh, 145 F.3d 516 (2d Cir. 1998) (*emphasis added*).

This is plainly insufficient to demonstrate that General Property is somehow Gordon's employer under both the FLSA and NYLL's definitions of employer. Indeed, Gordon does not even claim (nor could he) that it hired or fired him (or even had the power to do so), exercised any control over his work schedules or conditions of employment or was responsible for determining his rate and method of payment or paid him from its own funds. Moreover, none of Gordon's job responsibilities were for General Property's benefit, as he worked solely to aid in the Condo building's operations (his main duties being cleaning and maintaining/inspecting its mechanical systems).

The single basis Gordon essentially relies on is General Property's supervision of him for only half of his tenure. Of course, Gordon cannot claim that General Propety maintained constant oversight over his job duties, as General Property was not the Condo's managing agent for the first five years of his employment. [Exhibit A, ¶ 12, Exhibit B].

More than this, the Courts in this circuit have held that "mere boilerplate allegations that an individual meets the various prongs of the economic reality test" are insufficient to survive a motion to dismiss. Shi Ming Chen v. Hunan Manor Enter., 2018 U.S.Dist.LEXIS 29599 (S.D.N.Y. 2018); Tracy v. NVR, Inc., 667 F.Supp.2d 244 (W.D.N.Y. 2009) In this same vein, the Supreme Court has directed that "a plaintiff's obligation to provide  the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Shi Ming Chen, supra, 2018 U.S.Dist.LEXIS 29599 (*internal quotations, citations and alterations omitted*).

15

As is relevant here, Gordon has made no effort to plead, in sufficient detail, the bases for holding General Property liable as his employer, other than the generic, catch-all allegation that it supervised his job responsibilities during a portion of his employment. This is simply not enough to state a claim against it.

General Property did not hire Gordon and it had no control over Gordon, his duties, his rate of pay or his continued employment. General Property did nothing more - - by Gordon's own admission - - than oversee his work on an intermittent basis and hand him his checks paid by the Condo. For these reasons, the Complaint must be dismissed against General Property in its entirety.

## <u>CONCLUSION</u>

Wherefore, it is respectfully submitted that the Condo's motion for summary judgment dismissing the Complaint should be granted in all respects; and that the Court should grant such other and further relief as it deems just, proper and equitable.

Dated:  New York, New York
        November 15, 2019

BOYD RICHARDS PARKER & COLONNELLI
*Attorneys for the Defendants*


By:   ___Jacqueline L. Aiello_____
        Bryan J. Mazzola
        Jacqueline L. Aiello
        1500 Broadway, Suite 505
        New York, New York 10036
        212-400-0626

16

## **CERTIFICATE OF COMPLIANCE**

The foregoing brief was prepared on a computer.  A legible font, with one-inch margins, was used in compliance with Judge Koeltl's Individual Rules, as follows:

| | |
|---|---|
| Name of typeface: | Times New Roman |
| Point Size: | 12 |
| Line Spacing: | Double |

The total number of words in this brief, according to the word count on the word processing program utilized, inclusive of point headings and footnotes, and exclusive of pages containing the table of contents, table of citations, certificate of compliance or any authorized addendum containing statutes, rules and regulations, etc. is 4518.

BOYD RICHARDS PARKER &COLONNELLI
Attorneys for the Defendants
By: _____Jacqueline Aiello_____