UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
GLADSTONE GORDON,

                              Plaintiff,

                                                                         **Doc. No.: 19-cv-8107 (JGK)**

       -against-

GENERAL PROPERTY MANAGEMENT
ASSOCIATES, INC., and 124 WEST 24TH STREET
CONDOMINIUM,

                             Defendants.
------------------------------------------------------------------X

## PLAINTIFF'S LOCAL RULE 56.1 COUNTER-STATEMENT OF FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR <u>SUMMARY JUDGMENT</u>

     Pursuant to Rule 56.1(b) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Plaintiff Gladstone Gordon ("Plaintiff"), by and through his undersigned counsel of record, hereby submits this Local Rule 56.1 Counter-Statement of Facts in response to Defendants' Rule 56.1 Statement dated November 15, 2019, filed by Defendants General Property Management Associates, Inc. ("GPM") and 124 West 24th Street Condominium ("124"), (collectively, where appropriate, as "Defendants"), in connection with their motion for summary judgment. Plaintiff hereby responds and objects to Defendants' Rule 56.1 Statement as follows:

**Defendants' Statement:**

1. The Condo is located at 124 West 24th Street, New York, New York. [Exhibit A, ¶ 10].

    **Plaintiff's Response: Undisputed** for purposes of this motion.

    **Defendants' Statement:**

2. The Condo is a small residential apartment building, with twenty residential units and one commercial unit. [Exhibit B].

   **Plaintiff's Response: Undisputed** for purposes of this motion, except to the extent that "small" is a relative term and it is not at all clear what scale Defendants are using to make this characterization. This ambiguity, however, is immaterial.

   **Defendants' Statement:**

3. In or about June 2007, the Condo hired Gordon as its janitor/superintendent. [Exhibit A, ¶ 12].

   **Plaintiff's Response: Undisputed** for purposes of this motion.

   **Defendants' Statement:**

4. At that time, the Condo was not managed by General Property. [Exhibit A, ¶ 12; Exhibit B].

   **Plaintiff's Response: Undisputed** for purposes of this motion.

   **Defendants' Statement:**

5. Gordon worked his entire tenure, until late-November 2018, a [sic] janitor/superintendent. [Exhibit A, ¶¶ 12, 14].

   **Plaintiff's Response: Undisputed** for purposes of this motion that Defendants employed Plaintiff as a non-live-in superintendent during this time period. (Decl. Gordon, ¶ 2).

   **Defendants' Statement:**

6. Gordon's responsibilities included, among other things: inspecting and cleaning the elevators, motors, pumps and the Condo's other mechanical equipment; maintaining its walkways, including sweeping, washing and shoveling; cleaning the lobby, the hallway and common area walls; trash and recyclable removal; mopping, sweeping and vacuuming all of the Condo's floors; inspecting light fixtures; delivering residents' packages; and inspecting the roof, drains and gutters on a weekly basis. [Exhibit A, ¶ 14].

**Plaintiff's Response: Undisputed** for purposes of this motion. Additionally, Defendants required Plaintiff to, *inter alia*, ensure the Building's proper temperature; inspect and clean the elevator; remove trash and recycling twice per week; deliver packages to tenants; and respond to tenant complaints or requests. GPM General Manager Petra Scott provided Plaintiff with the cleaning supplies and tools that he needed to perform his work, such as mops, shovels, crowbars, and flashlights. (Decl. Gordon ¶¶ 3, 10, Exhibit A).

**Defendants' Statement:**

7. All of the work Gordon performed was at the Condo's building, for the benefit of the Condo. [Exhibit A, ¶¶ 12, 14].

**Plaintiff's Response: Undisputed** that all of the work that Plaintiff performed was at the Building. **Disputed** that Plaintiff's work was for the exclusive benefit of the Condo, as Defendants jointly employed Plaintiff from in or around October 2012 to November 5, 2018. (Decl. Gordon ¶ 2). Indeed, on September 16, 2013, after taking over the management for the building, GPM Manager Petra Scott issued Plaintiff a document titled "Duties and Responsibilities of the Superintendent." (Decl. Gordon ¶¶ 3-4, 10, Exhibit A). Moreover, Scott directly supervised Plaintiff's work by providing Plaintiff with his daily assignments via email and informing him of issues that required attention as they arose over the course of the day, and both Defendants paid Plaintiff in that both entities had their names on Plaintiff's paystubs. Both Defendants maintained his employment records, such as sign-in sheets and wage statements. (Decl. Gordon ¶ 4, 11, Exhibit B). Plaintiff worked exclusively for both Defendants at the Building during his entire period of employment and did not work for anyone else. (Decl. Gordon ¶ 12). Furthermore, the management agreement attached as Exhibit B to the Affidavit in Support of Defendants' Motion for Summary Judgment that Defendants submitted with their motion states, in relevant part, that "[GPM] shall render

services and perform duties with due diligence and care as follows: (a) On the basis of an operating schedule, job standards, and wage rates previously approved by [124] on the <u>recommendation of [GPM]</u> or resulting from wage negotiations with [124], investigate, hire, pay, supervise, and discharge [124's] personnel necessary to be employed in order to properly maintain and operate the Property." (Underscore added) (Affidavit in Support of Defendants' Motion for Summary Judgment, Exhibit B, pg. 2).   Thus, the work that Plaintiff performed was for the benefit of both Defendants.

**<u>Defendants' Statement</u>:**

8. On or about November 25, 2018, Gordon took leave due to a medical condition and since that time, he has not returned. [Exhibit A, ¶ 12].

**<u>Plaintiff's Response</u>: Undisputed** for purposes of this motion.

**<u>Defendants' Statement</u>:**

9. For the entire time period that Gordon was employed by the Condo, he was the Condo's sole employee. [Exhibits C - D].

**<u>Plaintiff's Response</u>: Disputed** in part as Defendants jointly employed Plaintiff. *See* response no. 7 *supra*.  Moreover, Defendants have not submitted any evidence as to how many employees GPM had, and Plaintiff requires discovery into this topic. (Decl. St. John 56 (d) ¶¶ 7-16).

**<u>Defendants' Statement</u>:**

10. Gordon claims that he generally worked up to 49.5 hours a week and the Condo did not pay him the requisite overtime rate. [Exhibit A, ¶¶ 15-17].

**<u>Plaintiff's Response</u>**: **Disputed** as to the word "generally," as Plaintiff claims that Defendants scheduled him to work, as his regular schedule, 49.5 hours per week. (Decl. Gordon ¶ 6). **Undisputed** that Defendants did not pay Plaintiff overtime.  Indeed, throughout the course of

Plaintiff's employment with Defendants, including the Relevant Period as defined in the Complaint, ECF 1, Plaintiff worked in excess of forty hours each week. (Decl. Gordon ¶ 5). Specifically, Defendants scheduled and required Plaintiff to work, and Plaintiff did work, from 8:00 a.m. to 5:00 p.m. on Monday through Friday, with a half-hour break each day, and from 9:00 a.m. to 4:00 p.m. on Saturdays without a break, for a total of forty-nine and one-half hours per week. This was Plaintiff's schedule throughout the Relevant Period. (Decl. Gordon ¶ 6). However, Defendants did not compensate Plaintiff with an overtime premium for hours that he worked in excess of forty each week. (*Id.*).

**Defendants' Statement:**

11. Gordon was generally paid a flat weekly rate, excluding other benefits such a year-end bonuses. [Exhibit A, ¶ 16; Exhibit B].

    **Plaintiff's Response: Disputed** in part as Defendants together paid Plaintiff a flat weekly rate every week. (Decl. Gordon ¶ 7, 11, Exhibit B). Specifically, in exchange for his work, throughout the Relevant Period and as reflected on his wage statements and pay stubs, Defendants together paid Plaintiff a flat salary of $1,040.00 per week. Plaintiff's hours and pay remained the same throughout his employment. (*Id.*).

    **Defendants' Statement:**

12. General Property is a professional property management service, located at 250 West 57th Street, New York, New York. [Exhibit A, ¶ 9].

    **Plaintiff's Response: Undisputed** for purposes of this motion.

    **Defendants' Statement:**

13. In January 2012 - - five years after Gordon was hired - - the Condo's Board decided to change its management company and replaced it with General Property. [Exhibit A, ¶ 2; Exhibit B].

**Plaintiff's Response: Undisputed** for purposes of this motion that in either January 2012 or as Gordon remembers, in or around October 2012, General Property became the management company for 124 West 24th Street, New York, New York 10107. (Decl. Gordon ¶ 2.) The dispute as to the date, however, is immaterial.

**Defendants' Statement:**

14. The Condo and General Property entered into a management agreement, which set forth General Property's duties as the Condo's agent. [Exhibit B].

    **Plaintiff's Response: Plaintiff denies knowledge or information sufficient to form a belief about the truth of Defendants' statement.** Furthermore, additional discovery is needed to ascertain the completeness and/or validity of this statement concerning whether the agreement that Defendants provide was the sole agreement that incorporated all terms of the relationship between Defendants. (Decl. St. John 56 (d) ¶¶ 7-12).

    **Defendants' Statement:**

15. General Property was generally responsible for overseeing the Condo's day-to-day operations, including collecting the unit owners' monthly common charges, enter [sic] into utility and other contracts necessary to maintain the Condo's premises, supervise [sic] Gordon's performance of his job duties previously set by the Condo's board and review and pay [sic] bills received for work conducted at the Condo [Exhibit B, ¶ 4].

    **Plaintiff's Response: Undisputed** for purposes of this motion. Additionally, *see* response no. 7 *supra*.

    **Defendants' Statement:**

16. General Property's role vis a vis Gordon was to supervise his job responsibilities and provide him with the paycheck issued from the Condo's account. [Exhibit B, ¶ 4].

**Plaintiff's Response**: **Disputed** in part as in addition to this, as stated above, *see* response no. 7 *supra*; *see also* Decl. Gordon, ¶ 11, Exhibit B, as detailed in response no. 11 above.  Furthermore, additional discovery is needed to ascertain the completeness and/or validity of this statement concerning whether Plaintiff's paycheck was issued solely from 124's account. (Decl. St. John 56 (d) ¶¶ 7-12).

**Defendants' Statement:**

17. On or about December 1, 2018, the Condo terminated its relationship with General Property. [Exhibit E].

    **Plaintiff's Response: Objection** as this is irrelevant under FRE 401 and thus inadmissible under FRE 402.  To the extent that the Court overrules this objection, **undisputed** for purposes of this motion**.**

    **Defendants' Statement:**

18. Gordon was not employed by General Properties. [Exhibits A-D].

    **Plaintiff's Response: Objection,** as this a pure legal conclusion interspersed in a statement of facts. *See Pape v. Dircksen & Talleyrand, Inc.*, 2019 WL 1435882, at * 2 (E.D.N.Y. Feb. 1, 2019) (quoting *Sattar v. U.S. Dep't of Homeland Sec.*, 669 F. App'x 1, 3 (2d Cir. 2016)) ("'Rule 56.1 statements are statements of fact rather than legal arguments.'"); *see also Congregation Rabbinical Coll. of Tartikov v. Village of Pomona*, 138 F. Supp. 3d 352, 394 (S.D.N.Y. 2015) ("[T]he Court can . . . disregard legal conclusions or unsubstantiated opinions in a Local Rule 56.1 statement."). To the extent a response is required**, disputed**, *see* response no. 7 *supra*.

    **Defendants' Statement:**

19. Gordon was employed exclusively by the Condo. [Exhibits A-D].

    **Plaintiff's Response: Objection and Disputed**, *see* response no. 18 *supra*.

7

**Defendants' Statement:**

20. General Properties did not pay Gordon with its own funds. [Exhibits C - D].

    **Plaintiff's Response: Disputed** as Defendants jointly paid Plaintiff. (Decl. Gordon ¶ ¶ 4, 11, Exhibit B).  Furthermore, additional discovery is needed to ascertain the completeness and/or validity of this statement. (Decl. St. John 56 (d) ¶¶ 7-12).

    **Defendants' Statement:**

21. Gordon's paychecks, as well as his health insurance, bonus and other incidental benefits, were all paid by the Condo. [Exhibits C - D].

    **Plaintiff's Response: Disputed,** *see* response no. 7 *supra*.  Furthermore, additional discovery is needed to ascertain the completeness and/or validity of this statement. (Decl. St. John 56 (d) ¶ 7-11).

    **Defendants' Statement:**

22. Gordon did not conduct any work for the benefit of General Properties' operations. [Exhibit A, ¶¶ 12, 14].

    **Plaintiff's Response: Objection**, as this a pure legal conclusion interspersed in a statement of facts. *See* response no. 18 *supra*.  To the extent a response is required, **disputed**, *see* response no. 7 *supra*.  Furthermore, additional discovery is needed to ascertain the completeness and/or validity of this statement. (Decl. St. John 56 (d) ¶¶  7-12).

    **Defendants' Statement:**

23. For each of the relevant years, the Condo's financial statements reflect that the total wages paid to its only employee directly correlates with Gordon's total income stated on the Employee Earnings Cards. [Exhibit D].

    **Plaintiff's Response**: **Undisputed** for the purposes of this motion.

    **Defendants' Statement:**

24. The Condo's financial statements further reflect that its annual revenue for each of the relevant years was under $500,000. [Exhibit D].

   **Plaintiff's Response**: **Undisputed** that 124's financial statements reflect that its annual revenue for each of the relevant years was under $500,000. However, additional discovery is needed to ascertain the completeness and/or validity of 124's financial statements to determine if they are accurate and complete. (Decl. St. John 56 (d) ¶¶ 7-12).

   **Defendants' Statement**:

25. General Property's only role in connection with paying Gordon was ministerial, i.e., to process his payroll checks from the Condo's bank account, as it did for the Condo's other accounts due and owing. [Exhibit B, ¶ 4].

   **Plaintiff's Response**: **Disputed**, *see* response no. 7 *supra*. Additional discovery is also needed to ascertain the completeness and/or validity of this statement (Decl. St. John 56 (d) ¶¶ 7-12).

   **Defendants' Statement:**

26. General Property had no authority to utilize its independent judgment related to Gordon, his pay or his job responsibilities. [Exhibit B, ¶ 4].

   **Plaintiff's Response: Disputed,** *see* response no. 7 *supra*. Additional discovery is also needed to ascertain the completeness and/or validity of this statement. (Decl. St. John 56 (d) ¶¶ 7-12).

   **Defendants' Statement:**

27. General Property had no authority to utilize its independent judgment for purposes of hiring or firing Gordon. [Exhibit B, ¶ 4].

   **Plaintiff's Response: Disputed** for the purposes of this motion, *see* response no. 7 *supra*, *see also* Defendants' statement in 30 *infra*. Additional discovery is needed to ascertain the completeness and/or validity of this statement. (Decl. St. John 56 (d) ¶¶ 7-12).

**Defendants' Statement:**

28. The management agreement specifically states that "[the Condo's] personnel shall in every instance be in [the Condo's] and not [General Property's] employ." [Exhibit B, ¶ 4].

    **Plaintiff's Response: Undisputed** for the purposes of this motion that the document states this. However, **objection,** as who is an "employer" is a pure legal conclusion interspersed in a statement of facts. *See* cases cited in response no. 18 *supra*. Moreover, *see* response no. 7 *supra*.

**Defendants' Statement**:

29. The management agreement further provides that the Condo's employees compensation "shall be considered an operating expense of [the Condo], and [General Property] is in no way liable to employees for their wages or compensation". [Exhibit B, ¶ 4].

    **Plaintiff's Response: Undisputed** for the purposes of this motion that the document states this. However, **objection,** as who is an "employer" and thus who is "liable to employees for their wages or compensation" is a pure legal conclusion interspersed in a statement of facts. *See* cases cited in response no. 18 *supra*. Moreover, *see* response no. 7 *supra*.

**Defendants' Statement:**

30. General Property only had the ability to pay, supervise and terminate Gordon based on the Condo's <u>previously approved</u> operating schedule, job standards and wage rates and it did not have the authority to exercise its independent judgment in its oversight of Gordon's employment. [Exhibit B, ¶ 4].

    **Plaintiff's Response: Disputed** for the purposes of this motion, *see* response no. 7 *supra*. Additional discovery is also needed to ascertain the completeness and/or validity of this statement. (Decl. St. John 56 (d) ¶¶ 7-12).

## ADDITIONAL FACTS

31.  Despite Plaintiff performing the work of a building janitor, at no point during Plaintiff's employment did Defendants provide Plaintiff with any written notice that they would compensate him as a "building janitor." (Decl. Gordon ¶ 9).

32.  Defendants failed to issue Plaintiff wage statements on each payday that, among other things, accurately listed the amount of hours that Plaintiff worked per week or his overtime rate of pay for hours that he worked in excess of forty per week. (Decl. Gordon ¶ 8).

Dated: Garden City, New York
December 20, 2019

Respectfully submitted,

BORRELLI & ASSOCIATES, P.L.L.C.
*Attorneys for Plaintiff*
910 Franklin Avenue, Suite 200
Garden City, New York 11530
Tel.   (516) 248–5550
Fax.   (516) 248–6027

By: _____
KENNETH F. ST. JOHN (KS 3542)
ALEXANDER T. COLEMAN (AC 1717)
MICHAEL J. BORRELLI (MB 8533)