USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/22/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GLADSTONE GORDON,

                    Plaintiff,                 19-cv-8107 (JGK)

        - against -                            OPINION AND ORDER

GENERAL PROPERTY MANAGEMENT
ASSOCIATES, INC. & 124 WEST 24TH
STREET CONDOMINIUM,

                    Defendants.

JOHN G. KOELTL, District Judge:

The plaintiff, Gladstone Gordon, brings this action against the defendants, General Property Management Associates, Inc. ("General Property") and 124 West 24th Street Condominium (the "Condo") under the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and the New York Code, Rules, and Regulations ("NYCRR"). The plaintiff principally alleges that the defendants failed to pay him overtime compensation.

The defendants move for summary judgment, arguing that the Court lacks jurisdiction under the FLSA because there is neither enterprise nor individual coverage. Additionally, the defendants argue that Mr. Gordon is a janitor under the New York Labor Law and is therefore not entitled to overtime. Finally, the defendants argue that General Property was not Mr. Gordon's employer.

For the reasons discussed below, the motion for summary judgment is **granted** in part and **denied** in part.

I

The following facts are undisputed unless otherwise noted.

The Condo, a residential building located on 124 West 24th Street, New York, New York, employed Mr. Gordon as the janitor and superintendent from June 2007 until November 2018. Pl.'s Rule 56.1 Stmt. ¶¶ 1-3, 5. In November 2018, Mr. Gordon took a medical leave of absence and has not returned to his job at the Condo. Id. ¶ 8.

During his employment at the Condo, Mr. Gordon's responsibilities included, among other things: inspecting and cleaning the elevators, motors, pumps and the Condo's other mechanical equipment; maintaining its walkways, including sweeping, washing and shoveling; cleaning the lobby, the hallway and common area walls; trash and recyclable removal; mopping, sweeping and vacuuming all of the Condo's floors; inspecting light fixtures; delivering residents' packages; and inspecting the roof, drains and gutters on a weekly basis. Id. ¶ 6. All of Mr. Gordon's work was performed at the Condo building, and he was the sole employee of the Condo. Id. ¶¶ 7, 9, 23. Mr. Gordon received a weekly salary of $1,040.00. Id. ¶ 11. Mr. Gordon alleges that he was required to work 49.5 hours per week without any overtime pay. Id. ¶ 10. The Condo's financial statements

2

reflect that the total wages paid to its only employee directly correlate with Mr. Gordon's total income stated on the Employee Earnings Cards. Id. ¶ 23. The statements further show that for the year ending December 31, 2018, the Condo recorded revenues of $240,600. Salzburger Aff., Ex. D at 69.

In 2012, five years after hiring Mr. Gordon, the Condo engaged General Property, a professional property management services firm, to manage the building.  Pl.'s Rule 56.1 Stmt. ¶¶ 12-13. General Property was responsible for overseeing the day-to-day operations of the Condo, collecting the unit owners' common charges, entering into various agreements to maintain the Condo's premises, supervising Mr. Gordon's performance of his job duties, and paying bills incurred by the Condo. Id. ¶ 15.

Beyond those basic facts, the parties dispute the nature of the relationship between Mr. Gordon and General Property. The defendants assert that Mr. Gordon performed all work for the benefit of the Condo, and that General Property's role vis-a-vis Gordon was to supervise his job responsibilities and provide him with a paycheck issued from the Condo's account. D.'s Rule 56.1 Stmt. ¶¶ 7, 16, 22. The defendants maintain that General Property had no authority to use its independent judgment related to Gordon, his pay or his job responsibilities and that their role in connection with paying Mr. Gordon was purely ministerial. Id. ¶¶ 25-27. Mr. Gordon challenges the validity of

these assertions with the following facts: first, after assuming its management duties, a General Property manager issued Mr. Gordon a document titled "Duties and Responsibilities of the Superintendent," Pl.'s Rule 56.1 Stmt. ¶ 7; Gordon Decl. ¶¶ 10, Ex. A; second, both defendants paid Mr. Gordon in that both entities' names appeared on his paystubs, wage statements, and sign-in sheets, Gordon Decl. ¶ 11, Ex. B; third, the management agreement between the defendants provides that General Property "shall render services and perform duties . . . [o]n the basis of an operating schedule, job standards, and wage rates previously approved by [the Condo] on the recommendation of [General Property]," Salzberger Aff., Ex. B.

Mr. Gordon brought this action against the defendants seeking compensation for overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times his regular pay, liquidated damages, and attorney's fees pursuant to the FLSA, 29 U.S.C. § 207(a). Compl. ¶¶ 22-28. Mr. Gordon brought an analogous claim under NYLL § 160 and NYCRR § 141-1.4. Finally, Mr. Gordon is seeking damages for the defendants' failure to furnish him wage statements with the criteria enumerated in NYLL § 195(3), pursuant to the statutory amounts listed in NYLL § 198(1-d).

## II

The standard for granting summary judgment is well established. "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).[1] "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994). The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

---

[1] Unless otherwise noted, this Opinion omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

In determining whether summary judgment is appropriate, a
court must resolve all ambiguities and draw all reasonable
inferences against the moving party. See Matsushita Elec. Indus.
Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary
judgment is improper if there is any evidence in the record from
any source from which a reasonable inference could be drawn in
favor of the nonmoving party. See Chambers v. TRM Copy Ctrs.
Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets
its burden, the nonmoving party must produce evidence in the
record and "may not rely simply on conclusory statements or on
contentions that the affidavits supporting the motion are not
credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532
(2d Cir. 1993). "Something more than a fanciful allegation is
required to justify denying a motion for summary judgment when
the moving party has met its burden of demonstrating the absence
of any genuine issue of material fact. A 'bare assertion' that
the evidence supporting a plaintiff's allegation is in the hands
of the defendant is insufficient to justify a denial of a motion
for summary judgment." Contemporary Mission v. United States
Postal Serv., 648 F.2d 97, 107 (2d Cir. 1981).

### III

The defendants make three arguments to support their motion
for summary judgment. First, with respect to Mr. Gordon's FLSA
claim, they argue that the Court lacks jurisdiction to hear the

claim because the employer is not subject to the FLSA under either enterprise or individual coverage. Second, they argue that General Property was not Mr. Gordon's employer and the case must therefore be dismissed against General Property in its entirety. Third, the defendants argue that the NYLL claim is barred by the janitorial exception.

**A**

The FLSA requires employers who meet certain conditions to provide overtime pay for work that exceeds forty hours per week. See 29 U.S.C. § 207(a). Because the FLSA was enacted to "correct" and "eliminate," id. § 202(b), "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers," id. § 202(a), courts construe the statute "liberally to apply to the furthest reaches consistent with congressional direction." Jacobs v. N.Y. Foundling Hosp., 577 F.3d 93, 97 n.2 (2d Cir. 2009) (per curiam) (quoting Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 296 (1985)). Employees qualify for the FLSA's protections if (1) in any workweek the employee is "engaged in commerce or in the production of goods for commerce," 29 U.S.C. § 206 (individual coverage), or (2) the employee "is employed in an enterprise engaged in commerce or in the production of goods for commerce," id. § 207(a)(1) (enterprise coverage).

Mr. Gordon does not assert that he is entitled to individual coverage under the FLSA. Rather, he claims that the FLSA's overtime provisions apply based on a theory of enterprise coverage. Under an "enterprise coverage" application, the employee does not himself need to be involved in an activity that affects interstate commerce. Jacobs, 577 F.3d at 96-97 (citing Alamo Found., 471 U.S. at 296). All employees of a business are covered under an enterprise theory if the defendant business (1) "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person"; and (2) "is an enterprise whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A).

The FLSA, in turn, defines an "enterprise" as "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements, but shall not include the related activities performed for such enterprise by an independent contractor." 29 U.S.C. § 203(r)(1). Reflecting this

broad language, the regulations promulgated by the Department of Labor ("DOL") under the FLSA explain that "several employers may conduct their business activities in such a manner that they are part of a single enterprise." 29 C.F.R. § 779.204.

Once the requirement of an "enterprise" is satisfied, liability under the FLSA extends to any "employer." 29 U.S.C. § 216(b); see Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999). The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "An entity 'employs' an individual under the FLSA if it 'suffer[s] or permit[s]' that individual to work." Zheng v. Liberty Apparel Co., 355 F.3d 61, 66 (2d Cir. 2003) (quoting 29 U.S.C. § 203(g)). This is "the broadest definition [of 'employ'] that has ever been included in any one act and it encompasses working relationships, which prior to [the FLSA], were not deemed to fall within an employer-employee category." Id. at 69. "The regulations promulgated under the FLSA expressly recognize that a worker may be employed by more than one entity at the same time." Id. at 66 (citing 29 C.F.R. § 791.2). As such, an entity that does not formally employ an individual may nevertheless be subject to joint and several liability under the FLSA as a "joint employer." See 29 C.F.R. § 791.2(f) ("For each workweek that a person is a joint employer of an employee, that joint

employer is jointly and severally liable with the employer and
any other joint employers for compliance with all of the
applicable provisions of the Act, including the overtime
provisions, for all of the hours worked by the employee in that
workweek.").

The Second Circuit Court of Appeals has described the
question of employment for FLSA purposes as "a flexible concept
to be determined on a case-by-case basis by review of the
totality of the circumstances." Barfield v. New York City Health
& Hosps. Corp., 537 F.3d 132, 141-42 (2d Cir. 2008). To
determine whether an entity is an "employer" for purposes of the
FLSA, courts in this circuit have relied on "a nonexclusive and
overlapping set of factors" "(1) to examine the degree of formal
control exercised over a worker; (2) to distinguish between
independent contractors and employees; and (3) to assess whether
an entity that lacked formal control nevertheless exercised
functional control over a worker." Id. at 143. Ultimately, due
to the "fact-intensive character of a determination of joint
employment," courts "rarely" make the determination as a matter
of law on a motion for summary judgment. Id. at 143-44; see also
Ling Nan Zheng v. Liberty Apparel Co., 355 F.3d 61, 76 n.13 (2d
Cir. 2003) ("The fact-intensive character of the joint
employment inquiry is highlighted by the fact that two of the
three leading cases in this circuit were appeals from judgments

following bench trials. In the third case, we decided that genuine issues of material fact precluded summary judgment on the ultimate issue of FLSA coverage.").

### B

Turning first to the issue of enterprise coverage, the question of whether a defendant qualifies as an enterprise under the FLSA is not a jurisdictional issue, as the defendants state, but an element that a plaintiff must establish in order to prove liability. Velez v. Vassallo, 203 F. Supp. 2d 312, 332 (S.D.N.Y. 2002). As such, in order to survive summary judgment, the plaintiff need not prove that enterprise coverage exists but rather that a material dispute of fact regarding the issue is present. Monterossa v. Martinez Rest. Corp., No. 11-cv-3689, 2012 WL 3890212, at *3 (S.D.N.Y. Sept. 7, 2012).

Mr. Gordon has done so here. As it relates to the Condo itself, the evidence submitted by the defendants shows the Condo does not qualify for enterprise coverage under the FLSA. It is undisputed that Mr. Gordon was the only employee of the Condo. Pl.'s Rule 56.1 Stmt. ¶ 9. Furthermore, the financial statements show that the Condo had revenue of less than $500,000. Salzburger Aff., Ex. D at 69. On this point, Mr. Gordon argues that "additional discovery is needed to ascertain the completeness and/or validity of [the Condo's] financial statements to determine if they are accurate and complete."

Pl.'s Rule 56.1 Stmt. ¶ 24. However, Mr. Gordon provides no basis for doubting the accuracy of the financial statements provided by the defendants, and "[s]omething more than a fanciful allegation is required to justify denying a motion for summary judgment when the moving party has met its burden of demonstrating the absence of any genuine issue of material fact." Contemporary Mission, 648 F.2d at 107.

While the Condo, taken alone, does not qualify as an "enterprise" within the meaning of the FLSA, Mr. Gordon has successfully demonstrated that genuine issues of fact exist with respect to enterprise coverage arising from the relationship between the Condo and General Property. The Act defines "enterprise" expansively to include "related activities performed (either through unified operation or common control) by any person or persons for a common business purpose." 29 U.S.C. § 203(r)(1). "The three main elements of the statutory definition of 'enterprise'" are (i) "related activities", (ii) "unified operation or common control", and (iii) "common business purpose." Brennan v. Arnheim & Neely, Inc., 410 U.S. 512, 518 (1973). With respect to the first element, activities will be regarded as "related" when they are "auxiliary or service activities such as warehousing, bookkeeping, purchasing, advertising, including, generally, all activities which are necessary to the operation and maintenance of the particular

business." 29 C.F.R. § 779.206(b); <u>see also</u> <u>Bowrin v. Catholic</u>
<u>Guardian Soc'y</u>, 417 F. Supp. 2d 449, 458 (S.D.N.Y. 2006)
(relying on 29 C.F.R. § 779.206(b)). Within this meaning, the
activities of the Condo and General Property were related.
General Property provides services to the Condo that are
integral to its operations, such as collecting common charges,
managing the superintendent, and paying various expenses. Pl.'s
Rule 56.1 Stmt. ¶¶ 12-16.

The element of "common control" includes the "power to
direct, restrict, regulate, govern, or administer the
performance of the activities." <u>Id.</u> (citing 29 C.F.R. §
779.221). Mr. Gordon has shown that an employee of General
Property acted as his supervisor, that his paystubs were issued
together by the Condo and General Property, and that the
agreement between the Condo and General Property contemplated
the possibility of General Property giving recommendations to
the Condo with respect to the operating schedule, job standards,
and wage rates. Pl.'s Rule 56.1 Stmt. ¶¶ 7; Gordon Decl., Ex. B;
Salzburger Aff., Ex. B, at 2. These facts suggest that both the
Condo and General Property exercised substantial control over
management of the building both with respect to Mr. Gordon and
otherwise.

Finally, with respect to the third element, the record
shows that there was a "common business purpose" in the

relationship between the Condo and General Property. Namely, the agreement between the defendants establishes an agency relationship pursuant to which General Property was engaged to manage the operations of the building. Salzberger Aff., Ex. B.

In sum, from the record submitted, there is sufficient evidence to infer that the relationship between the Condo and General Property gave rise to an enterprise within the meaning of the FLSA. Although the record does not clearly establish that this enterprise exceeds the required dollar threshold contained in 29 U.S.C. § 203(s)(1)(A), the defendants do not proffer any evidence to the contrary. While the defendants contend that the Condo does not have gross annual revenues of at least $500,000, they make no such contention with respect to General Property. Given the description of General Property as a "professional property management service located in . . . New York," D.'s Rule 56.1 Stmt. ¶ 5, that "is experienced in the management of condominium residential properties and working with condominium associations in the City of New York and thoroughly familiar with the requirements of providing first class management," Salzberger Aff., Ex. B at 1, there is a "genuine dispute as to . . . material fact[s]," Fed. R. Civ. P. 56(a), whether General Property together with the Condo has revenues over $500,000.

The parties confuse the issue of enterprise status (here, the existence of a single enterprise between the Condo and

General Property) with the issue of employment (here, whether
General Property was a "joint employer" of Mr. Gordon). The
existence of an enterprise is a threshold issue that determines
the applicability of the FLSA to a particular employee, while
being an "employer"—or a "joint employer" as the case may be—
determines the scope of liability under the Act. See Chao v. A-
One Med. Servs., 346 F.3d 908, 917 (9th Cir. 2003) ("Whether two
companies constitute a single enterprise for FLSA coverage and
whether they are liable as joint employers under § 207 are
technically separate issues."); Patel v. Wargo, 803 F.2d 632,
637 (11th Cir. 1986) ("The enterprise analysis is different from
the analysis of who is liable under the FLSA. The finding of an
enterprise is relevant only to the issue of coverage."). The
defendants' objection that "joint employers" cannot be
aggregated for the purposes of coverage under the FLSA is
misplaced. The single enterprise concept is the correct method
to determine FLSA coverage and the proper method for aggregation
of economic activity among disparate employers. See, e.g.,
Brennan, 410 U.S. at 521 (holding that the building management
activities of the defendant constituted a "single enterprise"
and, as such, should be aggregated for coverage purposes); see
also 29 C.F.R. § 779.201 ("The 'enterprise' is the unit for
determining whether the conditions of . . . the requisite dollar
volume are met. The 'enterprise' is also the unit for

determining which employees not individually covered by the Act are entitled to . . . overtime . . . benefits.").

C

The defendants also argue that summary judgment should be granted with respect to General Property because it was not Mr. Gordon's employer. In response, Mr. Gordon argues that General Property was a joint employer together with the Condo.

The employment relationship is conceived broadly under the FLSA and an employee can have multiple employers. The determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in "economic reality rather than technical concepts." Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33 (1961). Courts in the Second Circuit use two approaches to determine whether an employment relationship exists. An employment relationship may arise as a result of formal control exercised over a worker considering the following factors: (1) the power to hire and fire the employees; (2) supervision and control of employee work schedules or conditions of employment; (3) determining the rate and method of payment; and (4) maintenance of employment records. See Barfield, 537 F.3d at 142 (citing Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (1984)). Where formal control does not exist, an entity may nonetheless exercise sufficient functional control to be deemed an employer depending on a consideration of

the following factors: (1) the alleged employer's premises and
equipment were used for the plaintiffs' work; (2) the primary
employer had a business that could or did shift as a unit from
one alleged joint employer to another; (3) the plaintiffs
performed a discrete line-job that was integral to the alleged
employer's process of production; (4) responsibility under the
contracts could pass from one subcontractor to another without
material changes; (5) the alleged employer or [its] agents
supervised plaintiffs' work; and (6) plaintiffs worked
exclusively or predominantly for the alleged employer. See Id.
at 143 (citing Zheng v. Liberty Apparel Co., 355 F.3d 61, 72 (2d
Cir. 2003)). These rules "state no rigid rule for the
identification of an FLSA employer [but rather] they provide a .
. . set of factors to ensure that the economic realities test
mandated by the Supreme Court is sufficiently comprehensive and
flexible to give proper effect to the broad language of the
FLSA." Id.

Mr. Gordon has produced sufficient evidence to demonstrate
a genuine question of fact with respect to joint employment by
General Property. Mr. Gordon has shown, and the defendants do
not dispute, that he was supervised by General Property. Pl.'s
Rule 56.1 Stmt. ¶ 15; Salzberger Aff., Ex. B at 2. Furthermore,
the agreement between the defendants provided that General
Property could "hire, pay, supervise, and discharge the

[Condo's] personnel" in accordance with "an operating schedule, job standard, and wage rates previously approved by the [Condo] on the recommendation of [General Property]." Salzberger Aff., Ex. B at 2. The defendant's chief objection is that General Property was merely implementing the policies set by the Condo and performing the ministerial function of remitting payment to Mr. Gordon. The problem with this argument is twofold. First, the express language of the agreement demonstrates that General Property could affect these policies by making recommendations to the Condo. Such recommendations, if adopted by the Condo, vest General Property with sufficient "indirect" control to qualify it as an employer within the meaning of the FLSA. See Shultz v. Falk, 439 F.2d 340, 345 (4th Cir. 1971), aff'd, Falk v. Brennan, 414 U.S. 190, 210 (1973) ("Defendants either directly or indirectly hire, fire, and supervise the building workers. . . . [T]he decisions behind budget allocations appear to be considerably influenced by defendants' recommendations, since defendants are real estate management experts."). Second, the agreement plainly put General Property in charge of implementing the policies, thus exerting significant control over Mr. Gordon. See Barfield, 537 F.3d at 144 ("The fact that the [primary employer] may have exercised 'ultimate' authority in . . . areas [of hiring, firing, and conditions of employment] does not alter the fact that [the alleged joint employer] also

exercised <u>some</u> authority which helps establish the economic
reality of its status as a joint employer.") (emphasis added).
In addition, Mr. Gordon showed that General Property
administered his timesheets and pay, which is some evidence that
General Property was responsible for maintaining his employment
records. <u>See</u> Gordon Decl., Ex. B. In all, the record contains
sufficient evidence to demonstrate that three of the <u>Carter</u>
factors—power to hire and fire, supervision, and maintenance of
records—tip in favor of finding joint employment.

This conclusion is further supported by the seminal Supreme
Court decision on joint employment in <u>Falk v. Brennan</u> that
concerned the very question presented here: whether "maintenance
workers employed at the buildings managed by [a real estate
management company]" are "employees of the apartment owner or of
the [real estate management company]" under the FLSA. 414 U.S.
at 195. The Court held that "[i]n view of the expansiveness of
the Act's definition of 'employer' and the extent of [the
management company's] managerial responsibilities at each of the
buildings, which gave it substantial control of the terms and
conditions of the work of these employees . . . [the management
company] is, under the statutory definition, an 'employer' of
the maintenance workers." <u>Id.</u> There, like here, the management
company could merely make recommendations to the owners with
respect to key decisions. <u>Shultz v. Falk</u>, 439 F.2d at 345.

Nonetheless, the Supreme Court found that this amount of control suffced to render it an employer under the FLSA as someone "acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

Accordingly, the motion for summary judgment on the FLSA claim with respect to both defendants is **denied**.

D

Finally, the defendants argue that the New York Labor Law claim must be dismissed under the janitorial exception.

New York's labor regulations provide that "[a]n employer shall pay an employee, except a janitor in a residential building, for overtime at a wage rate of 1 1/2 times the employee's regular rate for hours worked in excess of 40 hours in a workweek." N.Y. Comp. Codes R. & Regs. tit. 12, § 141-1.4. The regulations define "janitor" as "a person employed to render any physical service in connection with the maintenance, care or operation of a residential building. Where there is only one employee, such employee shall be deemed the janitor. Where there is more than one employee in the building, the employer shall designate an employee who lives in the building as the janitor. No building may have more than one janitor." Id. § 141-3.4. "[W]hen only one employee is capable of being designated the janitor — either because he or she is the only employee performing janitorial services in the building, or the only such

employee living in the building — then the employee is considered the exempt janitor under section 141-3.4 regardless of whether the employee was designated as such." Contrera v. Langer, 290 F. Supp. 3d 269, 275 (S.D.N.Y. 2018). When there are multiple employees providing janitorial services, courts have used a multi-factor test to determine whether a reasonable jury would necessarily find that an employee was the designated janitor: "(i) whether Plaintiff was the only employee who lived in the building; (ii) the manner in which Plaintiff and other employees were compensated; (iii) whether Plaintiff was listed as a 'janitor' or 'superintendent' in the employer's official business records; (iv) whether Plaintiff received written notice that he would be compensated as a building janitor; and (v) whether Plaintiff or his employer represented to third parties that Plaintiff was the 'janitor' or 'superintendent.'" Almonte v. 437 Morris Park, LLC, No. 14-cv-5951, 2015 WL 7460019, at *5 (S.D.N.Y. Nov. 24, 2015).

Mr. Gordon does not dispute that he was the only employee of the building or that he was employed as a superintendent and was represented as such to third parties. Instead, referencing the multi-factor test from Almonte, Mr. Gordon argues that he never received notice about being compensated as a janitor and that the defendants did not offer any evidence that he was listed as a "janitor" or "superintendent" in their records, thus

21

allegedly raising a question of fact on these issues. However, Mr. Gordon's reliance on the Almonte test is misplaced. As the court there made clear, this multi-factor inquiry was only necessary in that case because multiple employees in that building were employed as janitors, thus creating a question of which one of them was designated as such for the purposes of the janitorial exemption from New York's overtime law. Here, in contrast, the building has only one employee and the regulation is clear that "[w]here there is only one employee, such employee shall be deemed the janitor." N.Y. Comp. Codes R. & Regs. tit. 12, § 141-3.4. Therefore, Mr. Gordon is indisputably a janitor, exempt from the overtime provisions of NYCRR. Accordingly, the defendants' motion for summary judgment is **granted** with respect to the New York Labor Law overtime claim.

**CONCLUSION**

The Court has considered all the arguments of the parties. To the extent not specifically addressed above, the arguments are either moot or without merit. For the reasons explained above, the motion for summary judgment on the FLSA claim is **denied.** The motion for summary judgment dismissing the NYLL and NYCRR overtime claim is **granted.** The defendants' motion for summary judgment did not address the third claim for relief under NYLL § 195(3) and accordingly that claim can proceed. The Clerk is directed to close Dkt. No. 19.

**SO ORDERED.**

Dated:    **New York, New York**
           **October 22, 2020**

                                **John G. Koeltl**
                    **United States District Judge**